UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**PHILLIP J CLARK** and
**MICHELLE L CLARK**,

Debtors.

Case No. **10-60414-13**

## MEMORANDUM of DECISION

At Butte in said District this 25th day of October, 2010.

In this Chapter 13 bankruptcy, after due notice, the Court held a hearing on September 13, 2010, in Butte on confirmation of the Debtors' Third Amended Chapter 13 Plan, filed August 24, 2010, to which objections were filed by the Chapter 13 Trustee and Helena Community Credit Union. Debtors were represented at the hearing by Benjamin C. Tiller of Helena, Montana. The Chapter 13 Trustee, Robert G. Drummond of Great Falls, Montana, also appeared at the hearing. Helena Community Credit Union was represented at the hearing by John Grant of Helena, Montana. Debtors Phillip J. Clark ("Phillip") and Michelle L. Clark ("Michelle") testified. Jeri Matthews and Liz Eich also testified. Debtors' Exhibit 1A and Helena Community Credit Union's Exhibits 2 through 9 were admitted into evidence without objection. At the conclusion of the parties' cases-in-chief the Court took the matter under advisement. After review of the record and applicable law, this matter is ready for decision. For the reasons set forth below the objections are overruled, in part, and sustained, in part, confirmation of Debtors' Third Amended

1

Chapter 13 Plan will be denied by separate order, and Debtors will be granted a final chance to amend their Chapter 13 plan.

This Court has jurisdiction in this Chapter 13 case under 28 U.S.C. § 1334(a). Confirmation of Debtors' Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

## FACTS

Phillip and Michelle (together "Clarks" or "Debtors") are married and live in a home they built in Helena, Montana. Phillip is employed as a deputy with the Lewis and Clark County Sheriff's Department and Michelle is employed by PACBLU Northwest as an RN Case Manger. Debtors live in Lewis and Clark County, Montana, and have four minor children, ages two to 14. Debtors filed their joint voluntary petition on March 9, 2010.

Debtors are indebted to Mountain West Bank ("MWB"). MWB's secured claim arises from a loan which MWB made to Debtors on February 29, 2008, in the principal amount of $354,744.01. MWB's loan is secured by a first position deed of trust on Debtors' residence. As of September 13, 2010, Debtors owed MWB approximately $419,301.21. Interest is accruing at the rate of $77.1809 per day. Debtors filed this voluntary joint bankruptcy petition one day before a scheduled Trustee's sale of the property securing MWB's loan.

Debtors are also indebted to Helena Community Credit Union ("HCCU") on three separate loans. HCCU is owed $64,976.17 on a loan referred to as the Lot 40 loan, $63,407.52 on a home equity loan, which is secured by Debtors' residence and Lot 40, and $9,983.53 on a vehicle loan. The Lot 40 loan was made on May 19, 2008, in the principal amount of

$45,000.00. The Lot 40 loan is due May 2, 2011. The amount necessary to reinstate the Lot 40 loan as of August 11, 2010, was $9,739.93.

The home equity loan was made on April 7, 2008, in the principal amount $57,000.00. The home equity loan is due April 25, 2023. The amount necessary to reinstate the home equity loan as of August 11, 2010, was $8,062.74.

Finally, the vehicle loan was made on March 21, 2008, in the amount of $15,851.50, which is secured by Debtors' 2003 Chevy Suburban 1500 Sport Utility Vehicle. Debtors are current on the vehicle loan at this time.

Debtors previously stipulated that the value of Debtors' home is $437,000 and the value of Lot 40 is $75,000.00. In a Memorandum of Decision and Order entered July 29, 2010, this Court granted MWB and HCCU relief from the automatic stay as to Debtors' residence, Lot 40 and Debtors' 2003 Chevy Suburban. MWB has scheduled another Trustee's sale of Debtors' residence for December 16, 2010, at 10:00 a.m.

In a Third Amended Chapter 13 Plan filed August 24, 2010, Debtors propose to make monthly plan payments of $1,000.00 for a period of 60 months. In addition to the monthly plan payments, the Debtors agree to make regular monthly payments through the Trustee on MWB's impaired secured claim ($2,605.00 less the Trustee's fee of $261.00) and HCCU's impaired secured claim against Lot 40 ($541.00 less the Trustee's fee of $54.00). Debtors' list their home equity loan to HCCU as an unimpaired secured claim with the arrearage paid on a pro rata basis through Debtors' Chapter 13 Plan. Debtors propose to hire a realtor and sell their residence and Lot 40 prior to September 30, 2012, but Debtors have not yet filed an application to approve the employment of a realtor.

At the time of the confirmation hearing, Debtors were two payments in arrears under their proposed Chapter 13 Plan, but stated they could make the delinquent payments by September 17, 2010. The Trustee is also holding approximately $23,000 that Debtors received from settlement of a lawsuit. Debtors' Chapter 13 Plan proposes that such amount will be paid to MWB and/or HCCU. Debtors' Plan states that payment in full of the arrearages owed to MWB and HCCU will constitute a cure under state law, entitling Debtors to all rights and benefits that accompany said cure. Debtors' Plan similarly provides that a "cure of arrearages under the terms of this plan constitutes a deceleration of any accelerated debt." Moreover, confirmation of Debtors' Plan is treated as a cure of HCCU's home equity loan and suburban loan "and reinstates the Debtors' rights as if no default had ever occurred." Finally, Debtors' proposed Chapter 13 Plan seeks to extend any balloon payments due to September 31 [sic], 2012.

Contrary to the May 4, 2010, appraisal of Darin Zeiler and Debtors' prior stipulation that Lot 40 is worth $75,000, Debtors called Jeri Matthews to testify to her belief that given two years, she thought she could sell Lot 40 for $110,000 to $120,000. Jeri Matthews opinion was based upon her five years of real estate experience and her comparative analysis of two sold properties and two current listings.

## DISCUSSION

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met." *(Barnes v. Barnes) In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1408 (9th Cir. 1995); *Chinichian v. Campolongo*, 784 F.2d 1440,

1443-44 (9th Cir.1986) (citing *In re Elkind*, 11 B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added).  Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title."  Therefore, the Debtors have the burden of proof on all elements of confirmation.  *Meyer v. Hill*, *(In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001).

HCCU and the Trustee object to confirmation of Debtors' Third Amended Chapter 13 Plan on several grounds.  HCCU objects to confirmation of Debtors' Third Amended Chapter 13 Plan on grounds the Plan is not proposed in good faith.  HCCU also argues that Debtors have not yet filed complete and accurate schedules, and Debtors' propose the sale of property free and clear of liens without paying the liens.  HCCU also asserts that it intends to commence foreclosure if Debtors' loans are not current by September 13, 2010.  The Trustee opposes confirmation of Debtors' Third Amended Chapter 13 Plan because Debtors have failed to make all payments due under their Plan as required by 11 U.S.C. § 1325(a)(2).

The mandatory and optional provisions of a Chapter 13 plan are set forth in 11 U.S.C. § 1322.  Several provisions of § 1322 relate to the cure of defaults through a Chapter 13 plan:

> (b) Subject to subsections (a) and (c) of this section, the plan may-
>
> * * *
>
> > (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, ...
> >
> > (3) provide for the curing or waiving of any default;
>
> * * *
>
> > (5) notwithstanding paragraph (2) of this subsection, provide for the curing

> of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

In general, § 1322(b)(3) permits debtors, through a Chapter 13 plan, to "provide for the curing or waiving of any default." 11 U.S.C. § 1322(b)(3). This provision applies to a default on a debt secured by an interest in a debtor's principal residence. *See In re Siegfried*, 16 Mont. B.R. 289 (Bankr. D. Mont. 1997). Although the Bankruptcy Code forbids modification in Chapter 13 cases of the rights of a creditor whose claim is secured solely by an interest in a debtor's principal residence (i.e. change the length of the contract or amount of the balance), curing a default through a Chapter 13 plan does not constitute modification of the creditor's interests. 11 U.S.C. § 1322(b)(2). *See, e.g., Litton v. Wachovia Bank (In re Litton)*, 330 F.3d 636, 644 (4th Cir.2003) (restoring the debtor and creditor to their respective positions under the contract by rectifying the prepetition default on a home mortgage debt pursuant a chapter 13 plan is considered to only cure the default and not modify the creditor's rights); *Jim Walter Homes, Inc. v. Spears ( In re Thompson)*, 894 F.2d 1227, 1228 (10th Cir.1990) ("contractual acceleration of mortgage debt upon default does not end the debtor's right to cure the mortgage default in bankruptcy"); *Clark v. Fed. Land Bank of St. Paul (In re Clark)*, 738 F.2d 869, 874 (7th Cir.1984) (power to cure a default allows the debtor to de-accelerate payment under a note secured by residential property).

Section 1322(b)(5) allows a debtor to cure a default within a reasonable time and to maintain payments during the case with respect to a claim on which the last payment is due after the due date of the final plan payment. 11 U.S.C. § 1322(b)(5). The reasonable time to cure, however, is limited by § 1322(c)(1), which states:

>    (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law-
>
>    >    (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law[.]

11 U.S.C. § 1322(c)(1).

Debtors cannot modify MWB's rights under § 1322(b)(2), because the obligation to MWB is secured solely by Debtors' principal residence. Section 1322(b)(2) would permit Debtors to modify the rights of HCCU. Section 1322(b)(3) allows Debtors to cure or waive any default, but does not permit modification of a claim, provided Debtors' Plan passes muster under § 1325(a), including (a)(5). Section 1322(b)(5) allows for the curing of any default within a reasonable time on a secured claim on which the last payment is due after the date on which the final payment under the plan is due. Under § 1322(b)(5), Debtors are not allowed to cure the default on HCCU's loan, secured by Lot 40, because the loan is due May 2, 2011, prior to completion of Debtors' Chapter 13 Plan.

The facts in this case are unique. It is well-settled that the commencement of a case under the Bankruptcy Code generally stays any and all proceedings against debtors. 11 U.S.C. § 362(a); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990). The importance of the automatic stay is discussed in the legislative history of § 362:

>    The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 340-42 (1977); S.Rep. No. 95-989, 95th Cong., 2d

Sess. 54-55 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787 at 5840-41 and 6296-97.  However, the fundamental debtor protections afforded by § 362(a) are not absolute.  11 U.S.C. 362(d).  Indeed, in this case, the Court has already granted MWB and HCCU relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1).

The fact that this Court has granted MWB and HCCU relief from the automatic stay creates a dilemma for Debtors because generally this Court addresses 11 U.S.C. § 1322(b)(5) and a cure-by-sale clause either while the automatic stay is still in place or in conjunction with a stay motion.  *See e.g. In re Snyder*, 420 B.R. 794 (Bankr. D.Mont. 2009).  For instance, in *In re Siegfried*, 16 Mont. B.R. 289 (Bankr. D. Mont. 1997), this Court denied a creditor's motion to modify stay on grounds the creditor was adequately protected.  The Court then proceeded in *Siegfried* to examine whether the debtor could cure the default within a reasonable time by means of a post-confirmation sale of the creditor's collateral.  As the Court explained in *Siegfried*, the debtor enjoyed a "substantial equity cushion as envisioned in [*In re Bellinger*, 179 B.R. 220 (Bankr. D.Idaho 1995)], where eventually the creditor w[ould] be allowed to obtain relief from the stay if the Debtor d[id] not sell the home as called for under the Plan before the equity cushion disappeare[ed]."  *Siegfried*, 16 Mont. B.R. at 297.

Because the automatic stay remained intact and because a foreclosure sale was not pending in *Snyder* and *Siegfried*, the Court did not need to specifically consider § 1322(c)(1).  The case *sub judice* is factually distinguishable from *Siegfried* and its progeny because MWB and HCCU are no longer bound by the automatic stay and Debtors have made no attempt to reimpose the automatic stay.  Under such scenario, § 1322(c)(1) clarifies that Debtors' default to MWB may be cured under § 1322(b)(3) or (5) until Debtors' residence is sold at a foreclosure

sale conducted in accordance with applicable nonbankruptcy law.  As explained in the legislative history of § 1322(c), a debtor may cure a home mortgage default "at least through completion of a foreclosure sale under applicable nonbankruptcy law."  140 Cong. Rec. H10,769 (daily ed. Oct. 4, 1994).

Following a judicial foreclosure of mortgaged real property, a judgment debtor has the statutory right to redeem the property from the purchaser at the sheriff's sale any time within one year after the sale.  *See* Mont. Code Ann. ("MCA") §§ 25-13-802 and 71-1-228.  During this one-year redemption period, the purchaser is not entitled to possession of the property if the debtor "personally occupies the land as a home for himself and his family."  MCA § 71-1-229.  However, such right of redemption and possession of the property is not permitted under Montana's Small Tract Financing Act.  MCA §§ 71-1-318 and 71-1-319.

As permitted under the Bankruptcy Code, under MCA § 71-1-312, Debtors are allowed cure any default on MWB's obligation prior to December 16, 2010, and halt MWB's foreclosure sale.  Debtors' proposed Plan, including Debtors' cure-by-sale provision, which grants Debtors until September 30, 2012, to sell their real property, is inconsistent with MWB's rights under state law.  *See In re Thompson*, 894 F.2d 1227, 1231 (10th Cir. 1990) ("The right to cure in bankruptcy should resemble its state law analogue[.]")

Similarly, Debtors cannot cure the default on HCCU's Lot 40 loan under 1322(b)(5), which is due in total on May 2, 2011, because the last payment is due prior to the last payment required under Debtors' plan.  In addition, for the reasons previously discussed, Debtors' proposal to have until September 30, 2012, to sell HCCU's real property collateral fails under § 1322(b)(3) and (5) because HCCU was granted relief from the automatic stay and may now

pursue its rights and remedies under state law.

The Court's final inquiry is whether Debtors may modify HCCU's rights under 11 U.S.C. § 1322(b)(2). In a recent decision, the Ninth Circuit Bankruptcy Appellate Panel explained:

> Courts that have examined the meaning of modification of rights of mortgage creditors in bankruptcy have held that only a mortgage creditor's rights to payment are protected from modification under § 1322(b)(2). *Grubbs v. Houston First Am. Sav. Ass'n*, 730 F.2d 236, 246-47 (5th Cir.1984) (en banc) (holding that § 1322(b)(2) was only intended to ensure that a plan preserved the size and periodicity of the monthly payments originally contemplated under the terms of the debt); *In re Larkins*, 50 B.R. 984, 986 (W.D.Ky.1985) ("'Modify' [in § 1322(b)(2) ] means to change the amount of the debt."); *Capital Resources Corp. v. McSorley (In re McSorley)*, 24 B.R. 795, 798 (Bankr.D.N.J.1982) ("There is no modification of a creditor's claim if he is receiving 100% of what he is due plus accruing interest up until the time of payment.").

More recently, the Fourth Circuit examined the meaning of "modification" in § 1322(b)(2) and ruled that this proscription only applied to "fundamental" aspects of a claim, i.e., the payment terms. As the Fourth Circuit explained:

> The bankruptcy courts have consistently interpreted the no-modification provision of § 1322(b)(2) to prohibit any fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment term of a note. *See, e.g., In re Schum*, 112 B.R. 159, 161-62 (Bankr.N.D.Tex.1990) (concluding that plan was impermissible modification because it proposed to reduce monthly payments and secured valuation). *In In re Gwinn*, 34 B.R. 936, 944-45 (Bankr.S.D.Ohio 1983), the court approved a plan as a permissible cure under § 1322(b)(5), because the plan did not propose to lower monthly payments, extend the repayment period, or make the obligation conditional. It instead sought only to reinstate the original contract with a minor delay in payment. *Id.*; *see also In re Cooper*, 98 B.R. 294 (Bankr.W.D.Mich.1989) (finding impermissible modification where plan proposed new payment schedule). Along similar lines, another bankruptcy court concluded that confirmation of a Chapter 13 plan would have constituted an impermissible modification because the plan proposed to alter fundamental aspects of the debtor's obligations, i.e., the nature and rate of interest, and the maturity features of the loan. *In re Coffey*, 52 B.R. 54, 55 (Bankr.D.N.H.1985). As these decisions have emphasized, § 1322(b)(2) prohibits modifications that would alter at least one fundamental aspect of a claim.

*Litton v. Wachovia Bank (In re Litton)*, 330 F.3d 636, 643-44 (4th Cir.2003) (emphasis added).

The approach taken in *Grubbs* and *Litton* appears consistent with the Supreme Court's analysis in *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993):

> The term "rights" is nowhere defined in the Bankruptcy Code. In the absence of a controlling federal rule, we generally assume that Congress has "left the determination of property rights in the assets of a bankrupt's estate to state law," since such "property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *See also Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). Moreover, we have specifically recognized that "the justifications for application of state law are not limited to ownership interests," but "apply with equal force to security interests, including the interest of a mortgagee." *Butner, supra*, at 55, 99 S.Ct. 914. The bank's "rights," therefore, are reflected in the relevant mortgage instruments, which are enforceable under Texas law. They include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure .... *See* Record 135-140 (deed of trust); *id*., at 147-151 (promissory note); Tex. Prop.Code Ann. §§ 51.002-51.005 (Supp.1993). These are the rights that were "bargained for by the mortgagor and the mortgagee," *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), and are rights protected from modification by § 1322(b)(2).

*Greenpoint Mortgage Funding, Inc. v. Herrera (In re Herrera)*, 422 B.R. 698, 718-19 (9th Cir. BAP 2010). While modification of the rights discussed above are prohibited with respect to a creditor whose claim is secured only by a security interest in a debtors' principal residence, such modification of rights is permissible as to creditors whose claim or claims are secured by property other than the debtor's principal residence, such as HCCU.

As discussed in *Herrera*, Debtors in this case may modify HCCU's rights. However,

11

modification of Debtors' home equity loan with HCCU is a pointless exercise because modification of HCCU's rights does not protect Debtors from MWB's scheduled sale of Debtors' home. Moreover, Debtors' proposed cure-by-sale provision does not pass muster under the standards articulated by this Court because Debtors no longer enjoy any equity cushion in their real property. In sum, Debtors have failed to sustain their burden regarding confirmation.

The Court notes that HCCU has also raised a good faith objection to confirmation of Debtors' Third Amended Chapter 13 Plan. **Other than an unexplained delay in amending their schedules, which this Court does not condone,** no evidence exists in the record of egregious behavior by the Debtors. In sum, after reviewing the totality of the circumstances the Court finds and concludes that the Debtors satisfied their burden under § 1325(a)(3) of showing that they proposed their Plan in good faith and not by any means forbidden by law.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction in this Chapter 13 case under 28 U.S.C. § 1334(a).

2. Confirmation of Debtors' Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

3. The Debtors are individuals with regular income eligible for relief under 11 U.S.C. § 109(e) and 11 U.S.C. § 101(30).

4. The Debtors have failed to satisfy their burden of proof on all elements of confirmation set forth at 11 U.S.C. § 1325. *In re Barnes*, 32 F.3d at 407; *In re Hill*, 268 B.R. at 552.

Accordingly, the Court will enter a separate order in conformity with the above providing as follows:

12

**IT IS ORDERED** that Helena Community Credit Union's objections to confirmation of Debtors' Third Amended Chapter 13 Plan are SUSTAINED in part and OVERRULED in part; confirmation of Debtors' Third Amended Chapter 13 Plan is DENIED; Debtors shall have until **Friday, October 29, 2010**, to file a final amended Chapter 13 plan; and a hearing on confirmation of Debtors' final amended Chapter 13 plan shall be held **Tuesday, November 2, 2010, at 9:00 a.m.**, or as soon thereafter as the parties can be heard, in the 2ND FLOOR COURTROOM, FEDERAL BUILDING, 400 N. MAIN, BUTTE, MONTANA.

        BY THE COURT

        /s/ Ralph B. Kirscher
        HON. RALPH B. KIRSCHER
        U.S. Bankruptcy Judge
        United States Bankruptcy Court
        District of Montana